UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DOUGLAS LANIER							PLAINTIFF

v.								CIVIL ACTION NO. 3:06-CV-602-S

KENTUCKY COMMISSION ON HUMAN RIGHTS			DEFENDANT

### MEMORANDUM OPINION

This matter is before the court upon the motion of the defendant, Kentucky Commission on Human Rights (the "Commission"), for summary judgment. For the reasons stated herein, the Commission's motion will be granted.

### BACKGROUND

This is an employment discrimination case filed by Douglas Lanier ("Lanier"), a former employee of the Commission, a state agency created by the Kentucky General Assembly in 1960. Lanier is an African-American male who is over forty years of age.

Lanier asserts he was subjected to "an unwarranted and unjustified five day suspension" on April 13, 2005, after he threatened a co-worker. The Commission imposed this discipline based on Lanier's violation of Kentucky's Workplace Violence Policy, 101 Ky. Admin. Regs. 2:095. The notice of suspension advised Lanier that was suspended from duty and pay because he had "threatened to beat the shit" out of a co-worker, William Suarez. Lanier attempted to challenge the suspension by filing appeals asserting discrimination with the Kentucky Personnel Board. The Personnel Board is a state administrative agency that is vested with the power to consider complaints by Kentucky executive branch employees. A party who is dissatisfied with a final order of the Personnel Board may appeal by filing a petition with the clerk of the Franklin Circuit Court.

Lanier's first Personnel Board appeal, No. 1005-139, was a complaint appealing his five-day suspension. His second Personnel Board appeal, No. 05-156, was a complaint asserting race

discrimination based on the same incident. These appeals were consolidated and the cases were presented before a state hearing officer at a two-day evidentiary hearing on September 6 and 7, 2005. The hearing officer of the Personnel Board recommended that Lanier's appeals be dismissed and advised Lanier that he had fifteen days to file exceptions. Lanier did not file any exceptions. The Personnel Board sustained the hearing officer's recommended order on December 20, 2005. Lanier did not exercise his right of appeal to challenge this decision.

Having lost his Personnel Board appeals, Lanier now asserts his federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, for race discrimination, age discrimination, reverse gender discrimination, retaliation, hostile work environment, and constructive discharge. He asserts supplemental state claims under the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010, *et seq*, as well as common-law claims for constructive discharge, intentional infliction of emotional distress, and invasion of privacy. The Commission moves for summary judgment on all claims.

## ANALYSIS

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153-61, S. Ct. 1598, 1606-10, 16 L.Ed.2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct.

- 3 -

1575, 1592-93, 20 L.Ed.2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Lanier asserts that the Commission's Motion is "exceedingly premature and could be denied on that basis alone." However, "[i]t is well-established that a motion for summary judgment may be filed prior to discovery. Rule 56(b) allows a defendant to file the motion at any time, so long as the non-moving party has had sufficient time to engage in discovery." *Jefferson v. Chattanooga Pub. Co.*, 375 F.3d 461, 463 (6th Cir. 2004). Here, the instant motion was filed on January 26, 2007, two months after Lanier filed his complaint.

Two months may or may not be a sufficient time to engage in the discovery process, depending on the complexity of the claims made and the history of the case. Here, given that Lanier had previously presented his discrimination claim before the Personnel Board, two months is arguably sufficient. However, we need not decide whether two months is sufficient, because Lanier fails to properly address this point.

It is up to the party opposing a motion for summary judgment to take advantage of Fed. R. Civ. P. 56(f), which allows that party to claim an inability to present facts essential to justify its opposition to summary judgment and which provides the court with the discretion to refuse the motion or postpone it to permit further discovery. *Id.* In making such a claim the opposing party must state why more discovery is needed. *Id.* (citing *Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir. 1998) (holding that a party invoking Rule 56(f) protections must "affirmatively demonstrate . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact").

Although in his Response, Lanier argues that the Commission's motion is premature and that summary judgment is particularly inappropriate prior to discovery, he does not assert why he needs additional time to complete discovery or even that additional discovery is needed to rebut the

Commission's motion. Therefore, the court will consider the motion ripe for summary judgment and proceed with the merits of the motion.

### I. Supplemental State Law Claims

The Commission asks that the court dismiss Lanier's supplemental state law claims for lack of jurisdiction, because the Eleventh Amendment and common law sovereign immunity bars these claims. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of a Foreign State.

U.S. Const. amend. XI.

This immunity is far-reaching and bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners, or its own citizens. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100-01, 104 S.Ct. 900, 907-09, 79 L.Ed.2d 67 (1984); *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993).

The Eleventh Amendment bars suits by private individuals against non-consenting states in federal court, unless Congress has validly abrogated the state's immunity or the state has waived its immunity. *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726, 123 S.Ct. 1972, 1976, 155 L.Ed.2d 953 (2003). A state may retain Eleventh Amendment immunity from suit in federal court even if it has waived its immunity and consented to be sued in state courts. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). In the absence of a state's unambiguous, statutory waiver of sovereign immunity in federal court, supplemental state law claims cannot be brought against it, even when they are appended to a federal claim. *MacDonald v. Village of Northport, Mich.*, 164 F.3d 964, 970 n.5 (6th Cir. 1999). The sovereign immunity implicated by the Eleventh Amendment

applies to both the state and its agencies. *Dubuc v. Mich. Bd. of Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003).

In Response, Lanier argues that "Kentucky has indeed consented to suit in federal court for violations of the Kentucky Civil Rights Act" given that the Kentucky Civil Rights Act is a means for implementing the state policies embodied in Title VII. The court rejects Lanier's argument that "[s]ince federal and state courts have concurrent jurisdiction over Title VII claims, it logically follows that both federal and state courts must necessarily have concurrent jurisdiction over claims brought under state laws explicitly patterned after Title VII. Otherwise, Kentucky would have dramatically departed from the law upon which its Act was modeled in a manner that would result in increased litigation expenses for both the state and its citizens, in a manner which would impede enforcement of anti-discrimination laws, and in a manner which could lead to inconsistent results in different forums."

While Lanier is correct that federal and state courts have concurrent jurisdiction over Kentucky Civil Rights Act claims, as noted above, the Supreme Court has held on multiple occasions that unless a state legislature *expressly* waives sovereign immunity for a state claim in federal court, then under the Eleventh Amendment that state may not be suit in federal court. Kentucky has not waived its immunity from suit in federal court for either claims under Ky. Rev. Stat. Ch. 344, which would duplicate Title VII claims, or common law tort claims.

Lanier also contends that the Commission is "distinct and separate from the state," rather than constituting the state's "arm" or "alter ego," and thus susceptible to suit. In *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005), the Sixth Circuit discussed the factors the Supreme Court and it have traditionally used to distinguish whether an entity is an "arm of the State." These factors consist of : (1) the state's obligation to pay any judgment that would accrue against the entity; (2) how the state's statutes and courts have referred to the entity and the degree of control the state has over the entity; (3) whether a state official appoints the entity's board members; and (4) whether the entity's

functions are akin to traditional state functions. *Id.* at 359-60. The first factor is the most important in this balancing test. *Id.* at 364-65.

The court's balancing of these factors reveals that the Commission is an executive branch state agency, an "arm" or "alter ego" of Kentucky. First, Kentucky's treasury would be responsible for any judgment against the Commission. The court knows of no other source from which a judgment in favor of Lanier could be paid. Second, Kentucky's courts and statutes refer to the Commission as a state agency. *See Commonwealth of Ky. v. Pendennis Club, Inc.*, 153 S.W.3d 784, 788 (Ky. 2004) (stating that the Commission's powers flow exclusively from state statutes); Ky. Rev. Stat. § 12.020(3); Ky. Rev. Stat. §§ 344.150-344.190. Third, the Governor of Kentucky appoints the Commissioners that control the Commission. Ky. Rev. Stat. § 344.150. Fourth, the Commission's functions includes investigating discrimination claims and conducting administrative hearings on a statewide basis, which are traditional state government functions.

Accordingly, the court rejects Lanier's argument that the Commission does not qualify for Eleventh Amendment immunity from suit. Lanier's supplemental state law discrimination clams and his common law claims must be dismissed for lack of subject matter jurisdiction.

### II. Reverse Gender Discrimination and Age Discrimination Claims

Before a plaintiff can file a Title VII discrimination claim, he must file a timely administrative complaint with the Equal Employment Opportunity Commission (EEOC) or state referral entity. *Jones v. Sumser Retirement Village,* 209 F.3d 851, 853 (6th Cir. 2000). Title VII requires that a plaintiff file a charge of discrimination with the EEOC and receive from it a Right to Sue notice before bringing suit in court. 42 U.S.C. § 2000e-5(e)(1). Moreover, "Title VII requires a party wishing to contest an allegedly discriminatory act to file a charge within 300 days of the act, if the party 'initially instituted proceedings with a State or local agency' qualified to provide relief, or within 180 days, if the party did not do so." *El-Zabat v. Nissan North America, Inc.*, 211 Fed. Appx. 460, 463 (citing 42 U.S.C. § 2000e-5(e)(1)). Lanier's claims of reverse gender discrimination

and age discrimination were not set forth in his EEOC charge. Thus, these claims have not been administratively exhausted and must be dismissed.[1]

### III. Race Discrimination

A Title VII plaintiff may establish a claim of racial discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence, which would give rise to an inference of discrimination. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). But, rarely will a plaintiff be able to provide direct evidence of discrimination, since only the most blatant discriminatory remarks constitute direct discrimination. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (stating that direct evidence "would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled'"); *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997) (explaining that "[r]arely can discriminatory intent be ascertained through direct evidence because rarely is such evidence available").

Thus, it most often falls on the plaintiff to prove his case through circumstantial evidence utilizing the burden-shifting approach set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.3d2d 668 (1973). This approach employs a four-factor test, first articulated in *McDonnell Douglas* and subsequently modified by the Sixth Circuit to fit the specific discrimination alleged. *See White v. Columbus Metropolitan Housing Authority*, 429 F.3d

---

[1]In his Response, Lanier argues that "[c]ase law clearly establishes that when a person challenges continuous discriminatory conduct rather than just a single discriminatory act, the 180 day limitation period of Title VII is not operative." Lanier is asserting the "continuing violation" theory, which holds that "if the discriminatory acts commenced prior to 180 day period and there was a continuous pattern of discrimination that continued into the 180 day period, plaintiff may still maintain her action on all the claims even though single discriminatory acts prior to the 180 days period are barred." *Hull v. Cuyahoga Valley Joint Vocational School. Dist. Bd. of Educ.*, 926 F.2d 505, 512 (citing *Held v. Gulf Oil Co.*, 684 F.2d 427 (6th Cir. 1982)). In other words, where a plaintiff challenges not just one incident of unlawful conduct but an unlawful practice that continues into the limitations period, the complaint is timely file within 180 days, or 300 days if with a state or local agency, of the last asserted occurrence of that practice.

However, Lanier does not claim that any acts of gender or age discrimination occurred prior to the time he received his five-day suspension. In fact, he makes no charge of any continuing violation in his EEOC complaint. Thus, the "continuing violation" theory is inapplicable.

232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000). Under the test, a plaintiff establishes her prima facie case of discrimination by showing that:

>  (1) He belongs to a protected class;
>
>  (2) He suffered an adverse employment action;
>
>  (3) He was qualified for the position; and
>
>  (4) He was treated differently from similarly situated members of the unprotected class.

*See Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 728-29 (6th Cir. 1999).

If the plaintiff is able to establish a *prima facie* case, then the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse action. Once it does so, the burden of going forward then shifts back to the plaintiff to show that the defendant's reason was actually a pretext to discriminate. *McDonnell Douglas*, 93 S.Ct. at 1824.

The Commission concedes that as to Lanier's five-day suspension, Lanier has established that he belongs to a protected class and that he suffered an adverse employment action when he received the suspension. However, it contends that Lanier fails to show that any comparable white employee was not similarly disciplined by for the same or similar workplace misconduct. It is correct. Lanier does not even make an allegation to this effect.

Yet, even if the court were to assume that Lanier can establish a *prima facie* case, the Commission proffers a legitimate, non-discriminatory reason for the suspension: the workplace violence incident in which he was involved. Lanier does not dispute that he threatened his co-worker.

To move forward from this point, Lanier must show pretext on the part of the Commission. He "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemicals*, 29 F.3d 1078, 1083 (6th Cir. 1994). For Lanier to discredit the Commission's non-discriminatory reason, he must "show by a preponderance

of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [the Commission's decision] . . . , or (3) that they were *insufficient* to motivate [the Commission's decision] . . . .'" *Id.* at 1084 (quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993)).

We can easily dispense with the first and third showings. Under the first showing, Lanier would have to demonstrate that he did not violate the workplace violence policy. *See id.* Yet, as noted above, Lanier does not dispute that he threatened his co-worker and that such threats constitute a violation of the policy. Under the third showing, Lanier would have demonstrate that the Commission does not typically suspend its employees for such violations of its policy. *See id.* Yet, Lanier has not even made this contention.

Generally, it is more difficult to determine whether a plaintiff has made the second showing, since the second showing requires an examination of all the circumstantial evidence presented by the plaintiff. Under this showing, Lanier would have to demonstrate that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* However, we are unable to discern any such circumstantial evidence from the material submitted by Lanier.

Lanier fails to meet his burden under the *McDonnell Douglas* framework, and therefore, we must dismiss Lanier's claim of race discrimination.

### IV. Retaliation

Retaliation claims are also analyzed under the *McDonnell Douglas* model. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002); *Ky. Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 701 (Ky. Ct. App. 1991). The plaintiff must establish a *prima facie* case of retaliation. Once that case is established, the burden is on the defendant to proffer a legitimate, non-discriminatory reason for its alleged retaliatory actions. To then move forward the plaintiff must provide evidence

that the defendant's reason was actually a pretext to retaliate. *Brown v. Crowley*, 312 F.3d 782, 805 (6th Cir. 2002).

> To establish her *prima facie* case of retaliation Lanier must prove:
>
> (1) He engaged in protected activity;
>
> (2) The Commission knew of that protected activity;
>
> (3) The Commission thereafter took adverse employment action against him or subjected him to severe or pervasive retaliatory harassment; and
>
> (4) There is a causal connection between his protected activity and the adverse employment action or harassment.

*See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792-93 (6th Cir. 2000).

Factors (1) and (2) are established. Lanier filed a charge with the EEOC, and the Commission knew of that protected activity. The Commission, however, disputes the third factor. Lanier asserts that he was subjected to both adverse employment action and retaliatory harassment and that these actions were the result of his filing a claim with the EEOC. The court disagrees with both contentions.

To establish the third factor Lanier must present clear evidence of adverse employment action or retaliatory harassment. *See Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). He must show a "materially adverse change in the terms and conditions of [his] employment." *Id.* (quoting and adopting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993). This change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* It "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* Any harassment must sufficiently severe or pervasive to create a work environment that the reasonable person would perceive as hostile. *Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir. 2003).

Basically, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult . . . ." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

Lanier complains that he was constructively discharged. However, "[a] hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004); *see also Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). Although in his Complaint Lanier claims he was "subjected to being ostracized . . . and to incidents of unlawful harassment and retaliation which included, but were not limited to, frequent eavesdropping, surveillance, and/or monitoring, questioning of co-workers regarding their conversations with the Plaintiff, unauthorized and unlawful inquires into Plaintiff's confidential medical history, and otherwise penalizing and/or stigmatizing Plaintiff for the lawful exercise of his rights," he presents no evidence to this effect. For the same reason, he has not established that he was subjected to retaliatory harassment.

Because Lanier cannot establish a *prima facie* case of retaliation, this claim must also be dismissed.

### V. Hostile Work Environment and Constructive Discharge Claims

Although the court finds that Lanier's hostile work environment and constructive discharge claims flow from his retaliation claim, as noted above, we also find that he fails to present any evidence with regard to either claim. Thus, these claims are subject to dismissal.

A separate order will be entered in accordance with this opinion.